| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>POUGHKEEPSIE DIVISION | HEARING DATE: April 19, 2018<br>HEARING TIME: 12:00 p.m. |

```
------------------------------------------------- x
In re                                             :
                                                  :   Case No. 17-35075 (CGM)
BRADLEY C. REIFLER,                               :
                                                  :   (Chapter 7)
                                Debtor.           :
------------------------------------------------- x
                                                  :
NORTH CAROLINA MUTUAL LIFE                        :   Adv. Pro. No. 17-09016(CGM)
INSURANCE COMPANY,                                :
                                                  :
                                Plaintiff,        :
                                                  :
                        v.                        :
                                                  :
BRADLEY C. REIFLER,                               :
                                                  :
                                Defendant.        :
------------------------------------------------- x
```

### UNITED STATES TRUSTEE'S RESPONSE TO PLAINTIFF'S
### MOTION FOR SANCTIONS AND ENTRY OF DEFAULT JUDGMENT

**TO THE HONORABLE CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE:**

William K. Harrington, United States Trustee for Region 2 (the "United States Trustee"), hereby files his Response (the "Response") to Plaintiff's Motion for Sanctions and Entry of Default Judgment (the "Sanctions Motion" or the "Motion"). For his Response to the Sanctions Motion, the United States Trustee respectfully represents and alleges as follows:

**I.    INTRODUCTION**

In the Sanctions Motion, Plaintiff North Carolina Mutual Life Insurance Company ("NCM" or the "Plaintiff") seeks sanctions against the Debtor for his violation of two court orders, for (1) his failure to allow NCM access to his electronic devices to preserve electronically stored information ("ESI") relevant to the claims for relief in NCM's adversary proceeding and

1

(2) the Debtor's destruction of ESI that should have been preserved. In the Motion, NCM cited testimony from NCM's deposition of the Debtor held in March 2018 in support of the allegation that the Debtor destroyed documents. In a footnote to the Motion, NCM disclosed that excerpts of the deposition transcript were not included as Exhibits to the Motion because Debtor's counsel, James W. Kennedy, told NCM that the transcript was to be kept confidential because he had not obtained or reviewed a copy. Under § 107(b), which sets forth two narrow exceptions to presumption and public policy of open public access to court documents, and Federal Rule of Bankruptcy Procedure 9018, only the Court has authority to determine the propriety of sealing documents; and any party that wants to restrict a document from public access must file a motion in compliance with § 107(b) and Rule 9018. Under § 107(b) and Rule 9018, Counsel did not have authority to designate the transcript as confidential and his reason for the unauthorized decision does not fall within the narrow exceptions set forth in the statute. Counsel's unilateral decision is also problematic because the Debtor's deposition testimony is likely relevant to claims for relief set forth in the UST's Complaint to Deny Discharge, claims in adversary proceedings filed by creditors, and the chapter 7 trustee's investigation of the Debtor's financial condition. For this reason, the Trustee, creditor plaintiffs, and the United States Trustee should have access to the deposition transcript consistent with the parties' agreement to cooperate with respect to documents and testimony obtained through discovery.

## II.    FACTS

### A.    The Chapter 7 Case

On January 20, 2017 (the "Petition Date"), Bradley C. Reifler (the "Debtor" or the "Defendant") filed a voluntary chapter 7 petition (the "Petition"). ECF Doc. No. 1. In the Petition, he stated under penalty of perjury that his debts were primarily business-related and that

he had not used any business names or Employer Identification Numbers in the eight years prior to the Petition Date. Petition, at 2, Question 4, and 6, Question 16. On the Petition Date, Marianne T. O'Toole was appointed as interim trustee under 11 U.S.C. § 701(a) and thereafter became the permanent trustee by operation of 11 U.S.C. 703(d) (the "Trustee"). The Trustee held the initial § 341(a) meeting of creditors on March 2, 2017 and has kept the meeting open since then. ECF Doc. No. 18.

### B.    The Debtor's Schedules and Statement of Financial Affairs

On the Petition Date, the Debtor filed only Schedules D and E/F with the Petition. ECF Doc. No. 1. He did not list any secured creditors on Schedule D. ECF Doc. No. 1. On Schedule E/F, he listed a tax lien held by the IRS, in the amount of $23,256,901.58, and general unsecured claims totaling $27,479,767.18. *Id*. On February 2, 2017, the Debtor filed Schedules A/B, C, G, H, I, and J, the Statement of Financial Affairs, and other required documents. ECF Doc. No. 9.

Before and after the § 341(a) meeting, the Debtor made numerous amendments to Schedules A/B and E/F and the Statement of Financial Affairs. On February 27, 2017 and May 4, 2017 respectively, the Debtor filed his First and Second Amended Schedules A/B. ECF Doc. Nos. 17 and 38. In the original and First Amended Schedule A/B, the Debtor claimed that he did not own any real property. Schedule A/B and First Amended Schedule A/B., at 1, Question 1. In Second Amended Schedule A/B, the Debtor disclosed for the first time that he held a life estate in his residence located at 123 Fraleigh Hill Road, Millbrook, New York (the "Residence"). Petition, at 2, Question 5, and Second Amended Schedule A/B, at 1, Question 1. On February 2, 2017 and May 4, 2017, respectively, the Debtor filed First Amended and Second Amended Schedules E/F. ECF Doc. Nos. 10 and 37. In First Amended Schedule E/F, he added five creditors, including NCM and Kelcop, L.P ("Kelcop"), as general unsecured creditors. ECF

3

Doc. No. 10.  In the second amendment, he added Global Reinsurance Corporation of America as a general unsecured creditor.  Second Amended Schedule E/F.

The Debtor amended his Statement of Financial Affairs three times on February 14, 2017, February 27, 2017, and March 30, 2017, respectively.  ECF Doc. Nos. 9, 17, and 23.  In the First Amended Statement of Financial Affairs, he disclosed for the first time that he had been a "non-member manager" of Forefront Partners, LLC from 2013 to the present.  First Amended Statement of Financial Affairs, at 8, Question 27.  Two weeks later, he further amended Question 27 to disclose that he had been a director of Forefront Income Trust from 2014 to the present and that he was a director of WINS f/k/a Sino-Mercury from 2014 to 2016.  Second Amended Statement of Financial Affairs, at 8, Question 27.  He also amended Question 23 to disclose for the first time that he holds or controls two bank accounts for Kelcop and one for BRSG, LLC.  *Id*. at 6, Question 23.  In his Third Amended Statement of Financial Affairs, the Debtor added two pending lawsuits not disclosed in the three prior versions: (1) *GB Forefront, L.P. v. Bradley*, pending in the Court of Common Pleas, Montgomery County, Pennsylvania, and (2) *NCM v. Reifler*, pending in the United States District Court for the Middle District of North Carolina.  Third Amended Statement of Financial Affairs, at 3, Question 9.  He also disclosed for the first time that he is a current member of Forefront Talking Capital Investment, LLC.  *Id*. at 8, Question 27.

      **C.**      **The Order Directing Debtor to Turn Over, or Provide Access to, All Electronic Devices and Data for Forensic Inspection and Data Collection (the "ESI Order")**

On May 1, 2017, NCM filed a complaint to determine the dischargeability of debts under 11 U.S.C. § 532 and to deny the Debtor's discharge under 11 U.S.C. § 727.  (Adv. Pro. No. 17-0916 (CGM) (the "NCM Adversary Proceeding" or the "Adversary Proceeding").  From the

4

beginning, NCM and the Debtor have been involved in ongoing discovery disputes over, among other things, the Debtor's failure to produce documents responsive to NCM's document production request. Letter, dated December 11, 2017, from NCM to the Court, requesting an informal discovery conference (the "December 11, 2017 NCM Letter"). ECF Doc. No. 80. Of special concern to NCM was the Debtor's production of just four emails, when NCM had hundreds of emails to or from the Debtor produced pursuant to third party subpoenas. December 11, 2017 NCM Letter, at 1. This discrepancy raised the issue of whether the Debtor was preserving ESI on computers and other electronic devices in his possession and control. *Id.* In an attempt to resolve the ESI issues with the Debtor, NCM proposed, in a letter dated December 1, 2017 (the "December 1, 2017 NCM Letter"), to retain a third party vendor to preserve ESI on the Debtor's electronic device; but the Debtor did not respond. On December 11, 2017, NCM informed the Court of the ESI and other discovery issues and requested an informal discovery conference. December 11, 2017 NCM Letter. On December 13, 2017, the Debtor filed a letter to the Court in response to the December 11, 2017 NCM Letter, which addressed points of contention but not the ESI issue, and requested an informal discovery conference with respect to the other discovery issues (the "December 13, 2017 Debtor Letter").[1] ECF Doc. No. 83. On December 15, 2017, NCM filed another letter (the "December 15, 2017 NCM Letter"), informing the Court that the Debtor had recently admitted that he regularly deletes emails and urgently requesting that the Court enter an order authorizing a third party vendor to preserve ESI from the Debtor's electronic devices. ECF Doc. No. 84. Because NCM and the Debtor could not reach agreement on discovery issues, the Court scheduled an informal discovery conference

---

[1] Other discovery disputes include (1) the format and organization of documents the Debtor produced; and (2) the scope of the definition of "insider" as defined in NCM's Request for Admissions. December 13, 2017 Debtor Letter, at 1-3.

5

for December 19, 2017 (the "December 19, 2017 Hearing"). ECF Doc. No. 81. At the December 19, 2017 Hearing, the Court granted NCM's request for an order; and on December 28, 2017, the Court entered the ESI Order, which directed the Debtor to turn over a list of all electronic devices in his possession or control, with descriptive information, within two days of entry of the ESI Order, and to produce or provide access to the Debtor's electronic devices to vendor RVM Enterprises, Inc. ("RVM") for inspection and imaging. ESI Order, ECF Doc. No. 98.

      **D.**    **The Order Holding Defendant in Contempt and Imposing Sanctions, entered on February 6, 2018 (the "Contempt Order")**

On January 16, 2018, NCM filed a Motion for Order Finding Defendant in Contempt (the "Contempt Motion"). ECF Doc. No. 104. In the Contempt Motion, NCM alleged that the Debtor violated the ESI Order, by, among other things, (a) failing to produce any ESI within the two-day deadline set forth in the ESI Order; (b) producing an incomplete list of electronic devices six days after the deadline; (c) informing NCM that he would turn over personal, but not business, electronic devices; (d) refusing to turn over business email accounts, claiming that he did not have control over any of them; (e) informing the RVM representative that he would not turn over electronic devices he has at the Residence; and (f) becoming angry and kicking the RVM representative out of the office before he had completed imaging files in the electronic devices that the Debtor had identified. Contempt Motion, at 4-6. After a hearing held on January 23, 2018, the Court entered the Contempt Order, finding, among other things, that "the Defendant is in ongoing and willful violation of this Court's ESI Order" and "the Defendant is directly complicit in his contempt of the ESI Order." Contempt Order, at 2-3. The Court ordered the Debtor to produce to NCM and RVM (a) all electronic devices he was required to produce under the ESI Order, (b) a full list of electronic devices, whether used for personal or

6

business matters, including a supplement to his original list, which left off identifying information for a number of electronic devices; (c) a list of all electronic devices in his possession, custody or control in the last five years that he alleges he can no longer access, including a detailed written explanation of the circumstances, and a list of the former business associates who presently have possession, custody, or control of the electronic devices. *Id*. at 2-4.  The Court also ordered the Debtor to pay as sanction all of NCM's attorney's fees and expenses incurred in bringing the Contempt Motion and all of RVM's fees and costs incurred in performing services under the ESI Order, within ten days after NCM and RVM filed affidavits setting their fees and expenses.  *Id*. at 5.  The Court also placed the Defendant

> on notice that any continuing violation of this Court's ESI Order or this Order finding him in contempt of the ESI Order may result in the imposition of additional sanctions against the Defendant, including but not limited to, (a) additional monetary sanctions, (b) entry of judgment in the Adversary Proceeding in favor of Plaintiff; and/or (c) indefinite, coercive confinement pursuant to 18 U.S.C. § 401 pending the Defendant's full compliance with the ESI Order.

*Id*. at 5-6.

### E. The Sanctions Motion

On March 5, 2018, NCM filed a letter to the Court (the "March 5, 2018 NCM Letter"), alleging that the Debtor was in violation of both the ESI Order and the Contempt Order and requesting that the Court impose further sanctions on the Debtor. ECF Doc. No. 133.  On March 6, 2018, the Court held a hearing on the March 5, 2018 NCM Letter but declined to make a decision without a motion (the "March 6, 2018 Hearing").  At that hearing, the Court also considered on shortened notice the Motion to Withdraw as Counsel, filed by the Debtor's bankruptcy attorneys, Genova & Malin.  ECF Doc. Nos. 178-79.  The Debtor's substitute counsel, James Kennedy of Kennedy Berg, LLP, appeared for the first time at the March 6, 2018 Hearing.  On March 8, 2018, the Court entered an Order Granting the Motion to Shorten Time

7

and a second authorizing Genova & Malin to withdraw as counsel. ECF Doc. Nos. 183-184. On March 26, 2018, Mr. Kennedy entered an appearance on the docket of the Debtor's case. ECF Doc. No. 196

On April 4, 2018, NCM filed the Sanctions Motion. ECF Doc. No. 157. NCM alleged that "the Defendant has engaged in a willful campaign of spoliation," by intentionally destroying ESI. Sanctions Motion, at 1. NCM's allegations are based on RVM's findings from its forensic examination of the Debtor's electronic devices, as set forth in the Declaration of Gregory Cancilla (the "Cancilla Declaration"), a Computer Forensic Engineer and RVM's Director of Forensics. Cancilla Declaration, Exhibit A to the Sanctions Motion. According to Mr. Cancilla, RVM conducted a forensic investigation of the Debtor's electronic devices to determine whether the Debtor "had destroyed, or attempted to destroy, electronically stored information ("**ESI**") relevant to the claims or defenses in the [Adversary Proceeding]." *Id*. at 3, ¶ 15 (emphasis in original). Among RVM's findings were that the Debtor conducted seventeen Internet searches using key words such as "erasing phone, email and text history," deleting files/data from SSD permanently, and the like. *Id*. at 3-5, ¶¶ 16(a) through (r). One of the websites the Debtor visited was for an application called "Eraser" that permanently deletes computer data. Id. at 5, Id. at 5, ¶ 16(r). According to Mr. Cancilla, the Debtor downloaded, installed, and opened Eraser and opened and saved Eraser's settings. *Id*. at 8, ¶¶ 20(a) through (e). RVM could not find any logs of deletion activity, which it says is consistent with use of Eraser to permanently delete files. *Id*. at 9, ¶ 20(f). RVM also found that the Debtor deleted at least 2,545 emails relevant to the Adversary Proceeding, including emails with multiple PDF attachments. *Id*. at 7, ¶ 18(g). Finally, RVM found that the Debtor had failed to identify forty-one electronic devices that he should have disclosed pursuant to the ESI Order and the Contempt Order. *Id*. at 9, ¶ 21.

The Debtor has not yet responded to the Sanctions Motion. However, in the Declaration of James W. Kennedy, filed in support of the Debtor's objection to NCM's Motion to Quash a Subpoena to RVM, the Debtor raised the issue of whether the declarations of RVM employees, filed with the March 5, 2018 NCM Letter, supported NCM's contention that the Debtor ran Eraser. Declaration of James W. Kennedy, at 2, ¶¶ 2-4. ECF Doc. No. 197.

### F. The Debtor's Deposition Testimony and Designation of the Transcript as Confidential

NCM conducted a deposition of the Defendant on March 7, 2018 (the "Deposition") and cited relevant testimony from the transcript (the "Transcript") in support of the allegations in the Sanctions Motion. According to NCM, the Debtor admitted to downloading Eraser just before RVM was to begin its forensic investigation, but claims that he did not use Eraser to permanently delete ESI. Sanctions Motion, at 14-15. NCM also stated that the Debtor testified that someone else conducted the Internet searches that RVM discovered, but he would not identify that person. *Id*. at 15. According NCM, the Debtor claimed that he downloaded Eraser to keep a medical condition private, but it is unclear whether the claim was part of the Debtor's deposition testimony. *Id*. at 16.

Even though NCM cited the Debtor's testimony in support of the Sanctions Motion, it did not attach relevant excerpts of the Transcript as an Exhibit to the Motion. According to NCM, the reason for this was that "[d]efendant's counsel improperly designated **the entire transcript** of Defendant's deposition as 'confidential.'" *Id*., n.5 (emphasis in original). Counsel's purported reason was that he had not obtained or reviewed a copy of the Transcript, even though a month had passed since the Deposition. *Id*.

III.    ARGUMENT

    A.    **Debtor's Counsel Did Not Have Authority to Designate the Transcript as Confidential.**

Restricting public access to documents filed in bankruptcy cases is governed by § 107 of the Bankruptcy Code, which provides, in part:

> **§ 107 Public access to papers**
>
> (a) Except as provided in subsections (b) and (c) and subject to section 112, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.
>
> (b) On request of a party in interest, the bankruptcy shall, and on the bankruptcy court's own motion, the bankruptcy court may –
>
>     (1) protect an entity with respect to a trade secret or confidential research, development or commercial information; or
>
>     (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

11 U.S.C. § 107(a) and (b).

There is a long-standing presumption and public policy favoring public access to court records. *See, e.g.*, *Nixon v. Warner Communication, Inc.*, 435 U.S. 589, 597–98 (1978); *In re Neal*, 461 F.3d 1048, 1053 (8th Cir. 2006); *In re Borders Group, Inc.*, 462 B.R. 42, 46 (Bankr. S.D.N.Y. 2011). Section 107(a) codifies the open access presumption and public policy favoring open access to court records. *In re Anthracite Capital, Inc.*, 492 B.R. 162, 170 (Bankr. S.D.N.Y. 2013). Open access "helps safeguard the integrity, quality, and respect in our judicial system and permits the public to keep a watchful eye on the workings of public agencies." *In re FiberMark, Inc.*, 330 B.R. 480, 505 (Bankr. D. Vt. 2005) (citations and internal quotation marks omitted). Sealing documents in a bankruptcy case is a "highly unusual and extraordinary remedy." *Video Software Dealers Assoc. v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 27 (2d Cir. 1994). "The public interest in openness of court proceedings is at its zenith when issues

10

concerning the integrity and transparency of bankruptcy court proceedings are involved. *In re Borders Group, Inc.*, 462 B.R. 42, 46 (Bankr. S.D.N.Y. 2011).

In light of these principles, § 107(b) provides for two narrow exceptions to the presumption: (1) protecting "an entity with respect to a trade secret or confidential research, development or commercial information;" or (2) protecting "a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title." 11 U.S.C. § 107(b); and *Anthracite,* 492 B.R. at 290.

Federal of Bankruptcy Procedure 9018 sets forth the procedure for seeking a sealing order from the Court, and it is clear that "obtaining an order sealing any court filing under section 107(b) requires a motion under Federal Rule of Bankruptcy Procedure 9018." *In re OldCo M Corp.*, 466 B.R. 234, 238 (Bankr. S.D.N.Y. 2012).

Rule 9018 provides as follows:

> **Rule 9018   Secret, Confidential, Scandalous, or Defamatory Matter**
>
> On motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information, (2) to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code, or (3) to protect governmental matters that are made confidential by statute or regulation. If an order is entered under this rule without notice, any entity affected thereby may move to vacate or modify the order, and after a hearing on notice, the court shall determine the motion.

Fed. R. Bankr. P. 9018.

Debtor's counsel did not have authority to make a unilateral determination that the Transcript is confidential. Under § 107 and Rule 9018, only the Court has the authority to determine whether sealing a document is appropriate; a party seeking a sealing order must comply with Rule 9018 and file a motion seeking that relief. If the Debtor intends to seek a

11

sealing order, he should follow proper procedure and if not, he should allow NCM to file the Transcript in support of the Sanctions Motion.

      **B.    Counsel's Failure to Obtain and Review the Transcript Does Not Fall Within the Narrow Exceptions to the Public Access Presumption Set Forth in § 107(b).**

Because the exceptions to the presumption are limited, the burden is on the moving party to show that a request to place documents under seal falls within the parameters of Section 107(b) and Rule 9018. *In re Food Management Group, LLC*, 359 B.R. 543, 561 (Bankr. S.D.N.Y. 2007). To meet this burden, the movant "must demonstrate extraordinary circumstances and compelling need to obtain protection." *Id*. The party seeking to seal documents filed in a bankruptcy case must show that (1) the information is the kind of information that courts will protect and (2) the party seeking the sealing order will suffer an injury that is serious and concrete. *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984). "Vague allegations that public access to documents would cause hardship are not sufficient to defeat the clear public policy embodied in section 107(a)." *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001).

Under § 107(b)(1), the Court is required to order the sealing of information that constitutes "a trade secret or confidential research, development or commercial information." "Confidential . . . commercial information" is information that would cause "an unfair advantage to competitors by providing them with information as to the commercial operations of the debtor." *Video Software Ass'n v. Orion Pictures Corporation (In re Orion Pictures Corporation),* 21 F.3d 24, 27 (2d Cir. 1994), quoting *Ad Hoc Protective Comm. For 10 ½ Debenture Holders v. Itel Corp. (In re Itel Corp.)*, 17 B.R. 942, 944 (B.A.P. 9th Cir. 1982). The unfair advantage must be in favor of a market **competitor**, not simply a creditor or claimant. *In

*re Alterra Healthcare Corp.*, 353 B.R. 66, 76 (Bankr. D. Del. 2006) (emphasis added). Merely embarrassing information is insufficient to prove entitlement to sealing. *Joy v.North*, 692 F.2d 880, 894 (2d Cir. 1982) ("disclosure of poor management . . . is hardly a trade secret").

Section 107(b)(2) provides that the Court shall "protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title." 11 U.S.C. § 107(b)(2). Under this provision, the movant must show that the information they want to seal is either scandalous, "because it was grossly offensive, irrelevant to the proceeding and submitted for an improper use" or defamatory "because the statements can be clearly shown to be untrue without the need for discovery or a mini-trial." *Anthracite*, 492 B.R. at 174-175.

Counsel purportedly designated the Transcript as confidential because in the month following the Deposition, he had not reviewed, much less obtained, a copy. It goes without saying that his reason for sealing the Transcript would not pass muster under § 107(b)(2). If Counsel thinks that information in the Transcript should be kept confidential, he must seek relief from the Court under § 107(b) and Rule 9018 and meet the burden of proving that his reason falls within one of the two exceptions.

Counsel's unilateral decision is also problematic because the Testimony is likely relevant to claims for relief set forth in the UST's Complaint to Deny Discharge, claims in adversary proceedings filed by creditors, and the chapter 7 trustee's investigation of the Debtor's financial condition. For this reason, the Trustee, creditor plaintiffs, and the United States Trustee should have access to the deposition transcript consistent with the parties' agreement to cooperate with respect to documents and testimony obtained through discovery.

IV.  **CONCLUSION**

Based on the foregoing, the United States Trustee respectfully requests that the Court grant relief as is just.

Dated:  Poughkeepsie, New York
April 12, 2018

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, REGION 2

By: */s/ Alicia M. Leonhard*
Alicia M. Leonhard
Trial Attorney
74 Chapel Street, Room 200
Albany, New York 12207
Telephone: 202.495.9929 (Direct)
            845.452.1696 (Voicemail)
Facsimile:  518.434.4459
Email: Alicia.M.Leonhard@usdoj.gov